IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELYN HALL, et al., <br>     Plaintiffs, <br> v. <br> HOUSING AUTHORITY OF THE COUNTY OF MARIN, <br>     Defendant. | Case No. 12-04922 RS (JSC) <br><br> ORDER GRANTING IN PART MOTION TO COMPEL <br> (Dkt. No. 33) |

In this putative class action brought under 42 U.S.C. Section 1983, Plaintiffs contend Defendant Marin Housing Authority violated the U.S. Housing Act, 42 U.S.C. Section 1437 *et seq.*, based on an alleged pattern and practice of conduct related to the allocation of rent payments, among other things. Pending before the Court is Plaintiffs' Motion to Compel Production of Documents and to Reschedule Motion for Class Certification (Dkt. No. 33). The discovery dispute was referred by Judge Seeborg to the undersigned for decision. After carefully considering the parties' written submissions, and having had the benefit of vigorous oral argument on October 17, 2013, the Court grants in part Plaintiffs' motion to compel as the documents Plaintiffs seek are relevant and discoverable.

//

**FACTUAL & PROCEDURAL BACKGROUND**

Plaintiffs Jacquelyn Hall, Ariana Martinez, Karla Fernandez, Chavon White, and Esther Williams ("Plaintiffs") sue Defendant Marin Housing Authority ("MHA" or "Defendant") seeking relief under 42 U.S.C. Section 1983 for alleged violations of the U.S. Housing Act, 42 U.S.C. Section 1437 *et seq*. Each plaintiff is a tenant of MHA. MHA is a Public Housing Authority established by the California legislature and operating under the U.S. Housing Act. "For those eligible for public housing under the Act, the amount that tenants pay for rent is calculated as a percentage of their income, and Public Housing Authorities are permitted to seek eviction on 14 days' notice in Unlawful Detainer actions only for nonpayment of this calculated amount of rent." (Dkt. No. 25 at 3) (citing 42 U.S.C. § 1437a (1)(A), (B), and (c); 24 C.F.R. § 966.4(1)(3)).

Plaintiffs seek "broad injunctive and declaratory relief to enforce federal civil rights on behalf of themselves and others similarly situated." (Dkt. No. 18 at 5.) They allege that Defendant has engaged in the following practices in violation of Plaintiffs' civil rights:

1. Allocating rent payments to a variety of other charges, causing what MHA contends is a rent shortfall, permitting both late charges and, after sufficient time, eviction;

2. Failing to credit rent payments at all, by virtue of failure to create a functioning accounting system;

3. Failing [to] provide meaningful grievance process, while proceeding to eviction on 14 day notices based on the claims which are the subject of the grievance;

4. Improperly re-calculating rent, or making the calculations late, then assessing improper "back rent" charges when such retroactive charges are improper. In instances when a decrease in rent is due, MHA fails to apply the required credit for the decrease during the delay period;

5. Improperly calculating the amounts demanded on 14 day eviction notices, based on the errors described above;

6. Assessing legal fees in settlements despite having no attorneys' fees

> clause in the lease, and when MHA had not prevailed in court, as is required by the act.

(Dkt. No. 40 at 4.)

Although the parties initially attempted to resolve the case through settlement, these attempts were ultimately unsuccessful. As a result of their settlement efforts, discovery was delayed such that Plaintiffs now seek discovery for purposes of their class certification motion which was originally due to be filed August 16, 2013. In particular, Plaintiffs seek (1) the production of 200 randomly selected tenant files and corresponding transaction registers, and (2) files of the 40 tenants identified by MHA in its Legal Charges Report as having paid legal charges between 2008 and the filing of suit on September 20, 2012.

Defendant has responded in part (providing over 7,000 pages of documents between July and August); however, Defendant objects to providing any additional documents in response to Plaintiffs' First Request for the Production of Documents Numbers One, Two, and Ten, which largely request of tenant files containing what Defendant characterizes as highly sensitive information, on the grounds that the requests implicate third-party privacy rights and are grossly overbroad. (Dkt. No. 34 at ¶ 8; Dkt. No. 39.)

## LEGAL STANDARD

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). The matter is relevant when it seeks admissible evidence or when the evidence is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "The scope of discovery under the Federal Rules has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)(internal quotations omitted). If a party fails to make disclosures or cooperate in discovery, the discovering party may move for an order compelling discovery. Fed. R. Civ. P. 37(a). The moving party bears the burden of "informing the court of the reasons that any objections are not justified" and why the information sought is relevant to the action. *Oyarzo v. Tuolumne Fire Dist.*, No. 11-01271, 2013 WL 1758798, at *4 (E.D. Cal. Apr. 24, 2013).

**DISCUSSION**

As an initial matter, the Court must address Defendant's oral argument assertion that because many of the sought-after documents were produced by tenants subject to the Privacy Act, 5 U.S.C. § 552(a), the Court should not order them produced at all. Defendant's argument, which it made without citation, is contradicted by the language of the Privacy Act itself. While the Act prevents the disclosure of "any record . . . except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains," there are 12 exceptions to the statute. *Ibrahim v. Dep't of Homeland Sec.*, C 06-00545 WHA, 2013 WL 1703367 * 6 (N.D. Cal. Apr. 19, 2013) (citing 5 U.S.C. § 552(b)). One of those exceptions is when the disclosure is "pursuant to the order of a court of competent jurisdiction." 5 U.S.C. § 552(b)(11).

The standard the Court applies to decide whether to order production of documents subject to the Privacy Act is the same as any other relevant documents. As the D.C. Circuit has held:

> Neither the statute nor anything in its legislative history specifies the standards for issuance of such a court order. We therefore find no basis for inferring that the statute replaces the usual discovery standards of the FRCP—in particular, Rules 26 and 45(b)—with a different and higher standard.

*Laxalt v McClatchy*, 809 F.2d 885, 888 (D.C. Cir. 1987); *see also Wallman v. Tower Air, Inc.*, 189 F.R.D. 566, 569 (N.D. Cal. 1999) (following *Laxalt*); *Clavir v. United States,* 84 F.R.D. 612, 614 (S.D.N.Y. 1979) (the exception for court orders "makes it completely clear that the act cannot be used to block the normal course of court proceedings, including court-ordered discovery"). Thus, "the Privacy Act does not establish a qualified discovery privilege that requires a party seeking disclosure under 5 U.S.C. § 552a(b)(11) to prove that its need for the information outweighs the privacy interest of the individual to whom the information relates." *Ford Motor Co. v. United States*, 825 F.Supp. 1081, 1083 (Ct. In't Trade 1993). Further, a court can order the documents produced even if the agency's regulations would ordinarily require the subject's consent. *See Christy v. United States*, 68 F.R.D. 375 (N.D. Tex. 1975).

4

While the Privacy Act does not mandate a higher standard, some, although not all, of the documents the Court orders produced as set forth below, are protected by a right to privacy. Regardless of whether the Court applies state or federal law the same principles govern: courts apply a balancing test to assess whether the need for the information sought outweighs the privacy right asserted. *Compare Rubin v. Regents of University of California*, 114 F.R.D. 1, 1 (N.D. Cal. 1986) *with Pioneer Electronics (USA) Inc. v. Super. Ct.*, 40 Cal.4th 360, 371 (Cal. 2007). The Court has applied such balancing test and finds that Plaintiffs' need for the information described below outweighs any privacy interests, especially in light of the Protective Order and other steps, such as redaction, that can be taken to reduce privacy concerns.

**A.     Documents Related to the Payment of Legal Fees**

One of Plaintiffs' claims is that Defendant improperly coerced tenants to pay legal fees in settlement of rent/eviction disputes. Defendant has provided Plaintiffs with the names of 40 tenants who purportedly paid such fees. At oral argument Plaintiffs narrowed their document request to seek each tenant's lease with Defendant, any documents reflecting the settlements, and the tenants' computerized transaction registers.

At oral argument Defendant agreed to stipulate that the leases for certain, perhaps even most, of these tenants did not contain provisions entitling Defendant to collect legal fees from the tenant. Defendant was unsure, however, whether for some of the tenants older leases did include such a provision. Accordingly, Defendant shall provide Plaintiffs with a stipulation as to those of the 40 tenants whose lease did not contain a fees provision and, as for the others, produce the governing lease. Any information which Defendant deems confidential, such as the amount of rent paid, may be redacted from the lease.

Defendant must also produce any Stipulation and Orders, or other documents, which reflect the settlement between Defendant and the tenant, including the obligation to pay legal fees. Such documents are relevant to Plaintiffs' claim that Defendant improperly coerced tenants to pay legal fees in settlement of eviction actions. If such documents are confidential then they may be produced pursuant to the protective order governing this action.

Finally, Defendant shall also produce the computerized transaction registers for each of these 40 tenants for the entire period the tenant has contracted with Defendant. The registers will show how payments the tenants made to Defendant were allocated and thus are relevant to Plaintiffs' claim that Defendant misallocated rent payments to legal fees or maintenance fees or otherwise, leading to improper notices of rent deficiencies.

Defendant's objection that Plaintiffs already possess the names and addresses of each of the 40 tenants and thus should have to question each tenant, that is, each putative class member, individually to obtain the information they seek is meritless. Such a process is unprecedented, burdensome, and unlikely to result in production of the relevant documents. Defendant's assertion that it has recently refunded the tenant's legal fees is likewise immaterial to the discovery dispute. Unless and until Plaintiffs' legal fees claim is dismissed, it is in the case and thus Plaintiffs are entitled to reasonable discovery.

**B.  Transaction Registers**

Plaintiffs also seek the computerized transaction registers for a random sample of 200 of Defendant's tenants. They contend the registers are needed to enable their experts to evaluate and refute Defendant's assertion that there was no consistent policy or practice that led to the alleged violations at issue in this lawsuit; that is, that the payments from all tenants were not always treated the same. Whether Defendant had a policy or practice that led to the alleged violations is of course directly relevant to class certification.

The transaction registers are relevant and Plaintiffs' request for a sample of 200 is reasonable. Defendant has not articulated any significant burden to producing these documents, and, at oral argument, forthrightly admitted that there are not serious privacy concerns. In any event, Plaintiffs have suggested that names and other identifying information could be redacted, provided there is a way to keep account of each tenant anonymously.

Defendant's lament that "class action grievances" are not permitted is unavailing. If Defendant believes that Plaintiffs are not permitted to maintain a class action as a matter of law then Defendant should move to dismiss the class action allegations. As of now the

allegations are in the case and, absent a stipulation to class certification, Plaintiffs are entitled to reasonable discovery to support their class claims.

### C.     Retroactive Rent Increases

Plaintiffs have also narrowed their requests to seek the "recertification" documents for those current tenants who were charged retroactive rent increases. Another of Plaintiffs' claims is that after tenants provide Defendant with updated income information which mandates a rent increase, Defendant delays implementing the rent increase and then subsequently improperly charges a retroactive rent increase. According to Plaintiffs, while such a retroactive rent increase is warranted when the tenant delays in providing the information to Defendant (for obvious reasons), it is not allowed when the fault for the delay lies with Defendant. Plaintiffs need to review the recertification documents to determine where the fault lays in any given case.

While Defendant belatedly raised a burden argument, it does not offer any alternative manner for Plaintiffs to obtain the relevant information. Its bald oral argument assertion that HUD found Defendant in 90% compliance is not helpful. Accordingly, Defendant shall produce the relevant recertification documents for the period September 2009 to the present. As these documents indisputably include private information, they may be produced subject to the Protective Order. Moreover, the parties shall follow the procedure set forth in paragraph 9 of the Protective Order.

### CONCLUSION

While Plaintiffs' document requests seeking "tenant files" were overbroad, their narrowed requests, as articulated at oral argument, seek relevant and discoverable documents. Accordingly, their motion to compel is granted as explained above and set forth below.

1.     On or before October 23, 2013, Defendant shall provide Plaintiffs with an evidentiary stipulation which identifies those tenants of the 40 whose lease did not include an attorneys fee provision.

2.     On or before October 30, 2013 Defendant shall produce the lease agreements for each of the 40 tenants who are not included in the stipulation described in paragraph one above.

3. On or before October 30, 2013, Defendant shall produce the entire transaction register for each of the 40 legal fees tenants.

4. On or before October 30, 2013, Defendant shall provide the relevant tenants with the notice required by paragraph 9 of the Protective Order in connection with the production of the re-certification documents. Defendant shall provide Plaintiffs with a copy of the intended notice on or before October 25, 2013. Defendant shall immediately commence gathering and copying the responsive recertification documents, and it shall produce such documents upon the expiration of the time for a non-party to move for a protective order.

5. On or before October 23, 2013, the parties shall meet in person to agree on a process for identifying the random 200 tenants whose computerized transaction registers are to be produced and on a schedule for production. If the parties are unable to agree, they shall submit a joint letter brief by October 25, 2013, not to exceed four pages (two pages per side), which presents each party's last and final offer.

This Order disposes of Docket No. 33.

**IT IS SO ORDERED.**

Dated: October 18, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE